98 F.3d 1359
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John A. MERZWEILER, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
 No. 96-3138.
 United States Court of Appeals, Federal Circuit.
 Oct. 15, 1996.
Rehearing Denied Nov. 25, 1996.
 
 Before NEWMAN, MAYER, and BRYSON, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 John A. Merzweiler petitions for review of a final decision of the Merit Systems Protection Board (the "Board"), Docket No. SF-0752-94-0356-M-2, which upheld his removal from the United States Postal Service for inability to meet the requirements of the position. We affirm.
 
 BACKGROUND
 
 2
 Merzweiler was employed as a custodial laborer with the Postal Service. As of about 1989, Merzweiler began engaging in inappropriate behavior toward his co-workers and supervisors, including Dan Lackey, his immediate supervisor. Several incidents led the Postal Service to initiate a fitness-for-duty evaluation in 1991. Because of a difference of opinion between the Postal Service's appointed psychiatrist and Merzweiler's psychiatrist, the Postal Service appointed a third psychiatrist to evaluate Merzweiler. Based on the third psychiatrist's evaluation, the Postal Service permitted Merzweiler to return to duty.
 
 
 3
 On May 6, 1993, there were two unrelated shootings at other postal facilities. That same day, two of Merzweiler's co-workers heard Merzweiler comment that Lackey would be the "next one to be used for target practice." As a result of those threatening comments and Merzweiler's prior behavior, the Postal Service initiated the present removal proceeding. At the Postal Service's behest, Dr. Randall L. Black, a psychiatrist, conducted a fitness-for-duty evaluation of Merzweiler. Dr. Black concluded that Merzweiler was not fit for duty unless he received psychiatric treatment. Merzweiler responded by submitting a one-page letter from another psychiatrist, Dr. Stephen Goldsmith, who concluded, based upon an MMPI-2 test, that Merzweiler was medically able to work and that Merzweiler's clinical profile was within normal limits.
 
 
 4
 The Postal Service requested that Dr. Black and Dr. Melvin Schwartz respond to the letter. Dr. Schwartz, who had been appointed to examine Merzweiler in 1991, evaluated Merzweiler again. As in 1991, Dr. Schwartz recommended Merzweiler's removal. Dr. Schwartz diagnosed Merzweiler as suffering from bipolar disorder, a mental illness, as well as a personality disorder. Dr. Schwartz also explained that the MMPI-2 test relied upon by Dr. Goldsmith is a notoriously poor diagnostic tool for certain conditions, including bipolar disorder.
 
 
 5
 Based upon Dr. Schwartz's evaluation, Merzweiler's past conduct, and Merzweiler's refusal either to seek treatment or to retire, the Postal Service removed Merzweiler from his position. The Postal Service subsequently filed an involuntary application for disability retirement benefits on Merzweiler's behalf with the Office of Personnel Management (OPM). At the same time, Merzweiler challenged his removal by filing an appeal with the Merit Systems Protection Board.
 
 
 6
 After OPM granted Merzweiler disability retirement benefits, the Board dismissed Merzweiler's appeal from his removal action as moot. The dismissal of the removal appeal, however, eliminated a prerequisite for granting disability retirement benefits. Consequently, the Board reactivated the removal appeal. The Administrative Judge subsequently issued a decision upholding the removal, and the full Board affirmed that decision.
 
 DISCUSSION
 
 7
 In challenging the Board's disposition of his removal appeal, Merzweiler first objects to the Board's consideration of certain events that he alleges were beyond the proper scope of the Board's review. In particular, he argues that the Board should not have considered a restraining order that was issued to prevent Merzweiler from contacting Lackey; the incidents leading to the 1991 removal proceeding; and several incidents that occurred after the 1991 evaluation, including the threat against Lackey. The Board's consideration of those events was proper, however, because each helped demonstrate a pattern of behavior supporting the Postal Service's conclusion that Merzweiler was unfit to perform his job.
 
 
 8
 There is also no merit to Merzweiler's objection to the reinstatement of the removal appeal. As this court previously ruled, the Board's initial dismissal of Merzweiler's appeal was not a final decision of the Board. Merzweiler v. U.S. Postal Service, No. 95-3478 (Fed.Cir. Oct. 6, 1995) (non-precedential opinion). Therefore, the Board's reinstatement of Merzweiler's appeal did not subject him to multiple actions based on the same conduct, but simply permitted Merzweiler to continue to appeal the Postal Service's removal decision.
 
 
 9
 Merzweiler next objects that Dr. Schwartz's evaluation provided an insufficient basis for concluding that he was unable to perform his job, particularly in light of the conflicting opinion from Dr. Goldsmith. We find the evidence sufficient to support the Board's decision. Dr. Schwartz conducted two thorough examinations of Merzweiler over a two-year period. Moreover, Dr. Schwartz explained that Dr. Goldsmith relied on a test that is ineffective at diagnosing Merzweiler's condition. Merzweiler's objection to the Postal Service's failure to appoint a third, "tie-breaker," psychiatrist is also without merit. No statute or regulation requires the appointment of such a "tie-breaker," and the collective bargaining agreement does not require a "tie-breaker" in this setting. In any event, both Dr. Black and Dr. Schwartz reached similar conclusions regarding Merzweiler's condition, so there were two psychiatrists who agreed that he was mentally unfit for duty.
 
 
 10
 Merzweiler complains that Dr. Black's evaluation, which prompted further review by Dr. Goldsmith and Dr. Schwartz, may have resulted from improper influence by Dr. Inbrahim Farid, the Postal Service's Medical Director. Merzweiler points to a memorandum from Dr. Farid to Manny Botello, the Postal Service official who initiated the removal procedure. Dr. Farid's memorandum, which was attached to an addendum to Dr. Black's evaluation, stated that the addendum was "the outcome of discussions I had last week with Dr. Black on this and other psychiatric issues, with the objective of harmonizing psychiatric reports with management goals." In evaluating that evidence, the Board found that the reference to Dr. Farid's discussions with Dr. Black related to a review of Merzweiler's records to ensure that he would not create a potential danger of violence in the future.
 
 
 11
 Substantial evidence supports the Board's determination that Dr. Farid's memorandum does not reflect improper influence over Dr. Black's evaluation. The discussions referred to in the memorandum related only to the addendum to Dr. Black's report, not to the report itself, which had concluded that Merzweiler was mentally unfit for duty. The addendum merely added that although Merzweiler might respond to medication, treatment would not be effective in the absence of cooperation on Merzweiler's part and that his past history reflected non-compliance and refusal of treatment.